UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------x
HONG TANG,

                                Plaintiff,

                                                        **MEMORANDUM & ORDER**
                - against -                              19-CV-6099 (PKC) (PK)

JUSTIN P. GROSSMAN, in his individual and
official capacities (as City Marshal); NEW
YORK CITY DEPARTMENT OF
INVESTIGATION; and CITY OF NEW
YORK,

                                Defendants.
---------------------------------------------------------x
PAMELA K. CHEN, United States District Judge:

        Plaintiff Hong Tang brings this action against New York City Marshal Justin P. Grossman,

along with the City of New York (the "City") and the New York City Department of Investigation

(collectively the "City Defendants"), asserting various constitutional violations under 42 U.S.C.

§ 1983. (*See generally* Complaint ("Compl."), Dkt. 1.) Before the Court are Defendant

Grossman's and the City Defendants' motions to dismiss. (Dkts. 17, 18.) For the reasons

discussed below, the Court grants Defendants' motions to dismiss.

**BACKGROUND[1]**

**I.      Relevant Facts**

        Prior to October 6, 2016, Plaintiff rented an apartment in Manhattan. On October 6, 2016,

Defendant Grossman, in his capacity as New York City Marshal, served Plaintiff with a notice of

eviction. (Compl., Dkt. 1, at 5.) On October 13, 2016, the Appellate Term of the New York

---

[1] For purposes of this motion, the Court assumes the truth of all non-conclusory allegations
in the Complaint. *See Forest Park Pictures v. Universal Television Network, Inc.*, 683 F.3d 424,
429 (2d Cir. 2012).

Supreme Court issued a temporary stay of that notice. (*Id.*; *see also id.* Ex. A, Dkt. 1, at ECF[2] 10.) Defendant Grossman was served with notice of that stay, which lifted on October 27, 2016. (Compl., Dkt. 1, at 5–6; *id.* Ex. B, Dkt. 1, at ECF 12.) Pursuant to the New York City Marshals Handbook of Regulations ("Marshals Handbook"), "[t]he marshal must give the [tenant-]respondent an additional notice of eviction where a Court order stays the eviction after service of a notice of eviction and the stay later expires or is vacated, unless the Court specifically waives the requirement of an additional notice[.]" (Compl. Ex. C, Dkt. 1, at ECF 15; *see also* Compl., Dkt. 1, at 6.) Rather than serving Plaintiff with an additional notice of eviction, however, Defendant Grossman "took legal possession of the premises on November 3, 2016 by surprise," despite Plaintiff having "inform[ed] Defendant . . . that no additional notice of eviction had been given yet and [that] an additional notice . . . [wa]s required by law and policy." (Compl., Dkt. 1, at 6.) Plaintiff alleges that Defendant Grossman's failure to abide by the Marshals Handbook was "a direct result of the failures of [the City Defendants] to provide adequate training, exercise necessary supervision, and properly implement policies and internal process[.]" (*Id.*)

In his Complaint, Plaintiff asserts the following claims: (1) a claim against Defendant Grossman pursuant to 42 U.S.C. § 1983 ("Section 1983") for violation of Plaintiff's due-process and equal-protection rights (*id.* at 6); (2) a claim against the City Defendants pursuant to *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978) (*id.*); and (3) state-law claims against Defendant Grossman, including (i) unlawful eviction under Real Property Actions & Proceedings Law § 853, (ii) negligence, (iii) intentional infliction of emotional distress, (iv) negligent infliction of

---

[2] Citations to "ECF" refer to the pagination generated by the Court's CM/ECF docketing system and not the document's internal pagination.

emotional distress, (v) conversion, and (vi) trespass to chattels (*id.* at 6–7). Plaintiff seeks damages and costs. (*Id.* at 7.)

## II.     Procedural History

Plaintiff filed the instant action on October 29, 2019. (*See generally* Compl., Dkt. 1.) On April 10, 2020, Defendants filed pre-motion conference requests in connection with their anticipated motions to dismiss (Dkts. 17, 18), which the Court construed as the motions themselves (4/29/2020 Docket Order). Briefing in connection with the motions to dismiss was completed on June 11, 2020. (*See* Dkts. 24, 27, 30.)

## LEGAL STANDARD

## I.     Federal Rule of Civil Procedure 12(b)(1)

Federal Rule of Civil Procedure ("Rule") 12(b)(1) provides for the dismissal of a claim over which the Court lacks subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). "Where jurisdictional facts are placed in dispute, the court has the power and obligation to decide issues of fact by reference to evidence outside the pleadings, such as affidavits." *APWU v. Potter*, 343 F.3d 619, 627 (2d Cir. 2003) (quoting *LeBlanc v. Cleveland*, 198 F.3d 353, 356 (2d Cir. 1999)). "In that case, the party asserting subject matter jurisdiction 'has the burden of proving by a preponderance of the evidence that it exists.'" *Tandon v. Captain's Cove Marina of Bridgeport, Inc.*, 752 F.3d 239, 243 (2d Cir. 2014) (quoting *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000)); *see also Makarova*, 201 F.3d at 113 (citing *Malik v. Meissner*, 82 F.3d 560, 562 (2d Cir. 1996)).

## II.     Federal Rule of Civil Procedure 12(b)(6)

To survive a motion to dismiss pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows

the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). The plausibility standard "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (internal citation omitted). Determining whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679 (internal citation omitted). In addressing a motion to dismiss, the court should "draw all reasonable inferences in Plaintiffs' favor, assume all well-pleaded factual allegations to be true, and determine whether they plausibly give rise to an entitlement to relief." *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011) (internal quotation marks and citations omitted). However, a court is not bound to accept "conclusory allegations or legal conclusions masquerading as factual conclusions." *Rolon v. Henneman*, 517 F.3d 140, 149 (2d Cir. 2008) (internal quotation marks and citation omitted). A court may also consider certain additional materials, including documents attached to the complaint as an exhibit or incorporated in it by reference, matters of which judicial notice may be taken, and documents that are integral to the complaint. *See Goel v. Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016).

## DISCUSSION

### I.    *Pro se* Litigants

Generally, complaints brought by *pro se* litigants are "held to less stringent standards than formal pleadings drafted by lawyers," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (internal quotation marks and citations omitted), and are construed liberally "to raise the strongest arguments that they suggest," *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (internal quotation marks, citations, and emphasis omitted). Though Plaintiff is an attorney, he argues that the Court should treat his Complaint as if it had been filed by a nonlawyer, as he is

proceeding *pro se*.  (Plaintiff's Response in Opposition to Defendants' Motion to Dismiss ("Pl.'s Opp."), Dkt. 24, at 1.)

However, "*pro se* attorneys . . . typically 'cannot claim the special consideration which the courts customarily grant to *pro se* parties.'"  *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 82 n.4 (2d Cir. 2001) (quoting *Harbulak v. County of Suffolk*, 654 F.2d 194, 198 (2d Cir. 1981)); *see also Tracy v. Freshwater*, 623 F.3d 90, 102 (2d Cir. 2010) ("[T]he degree of solicitude may be lessened where the particular *pro se* litigant is experienced in litigation and familiar with the procedural setting presented . . . .  [A] lawyer representing himself ordinarily receives no such solicitude at all." (internal citations omitted)); *Fenner v. City of New York*, No. 08–CV–2355 (BMC) (LB), 2009 WL 5066810, at *3 (E.D.N.Y. Dec. 21, 2009) ("It is well[-]settled in the Second Circuit that since the reason for affording *pro se* litigants special deference is not present when the litigant is an attorney, no special consideration is required." (citations omitted)).

The Court will thus evaluate Plaintiff's Complaint in accordance with regular pleading standards rather than the deference afforded non-lawyer *pro se* litigants.

## II.   Claims Against Defendant Grossman

Plaintiff alleges that Defendant Grossman's failure to serve a second notice of eviction "deprived Plaintiff of rights of due process and equal protection[.]"  (Compl., Dkt. 1, at 6.) Defendant Grossman argues that (1) pursuant to the *Rooker-Feldman* doctrine, the Court lacks subject matter jurisdiction to adjudicate any claim relating to his failure to serve a second notice of eviction because the state court already denied this challenge; and (2) regardless of subject matter jurisdiction, Plaintiff fails to state a claim.  (Defendant Grossman's Letter Motion to Dismiss ("Grossman's Mot."), Dkt. 18, at 1–3.)  "When a defendant moves to dismiss under Rule 12(b)(1) for lack of subject matter jurisdiction[] and also moves to dismiss on other grounds such as Rule 12(b)(6) for failure to state a claim upon which relief can be granted, the Court must

consider the Rule 12(b)(1) motion first." *Bobrowsky v. Yonkers Courthouse*, 777 F. Supp. 2d 692, 703 (S.D.N.Y. 2011) (citing, *inter alia*, *Rhulen Agency, Inc. v. Ala. Ins. Guar. Ass'n*, 896 F.2d 674, 678 (2d Cir. 1990)). The Court thus considers Defendant Grossman's *Rooker-Feldman* argument first.

### 1. *Rooker-Feldman*

The *Rooker-Feldman* doctrine, which has grown out of *Rooker v. Fidelity Tr. Co.*, 263 U.S. 413 (1923), and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983), provides that "federal district courts lack jurisdiction over cases that essentially amount to appeals of state court judgments." *Vossbrinck v. Accredited Home Lenders, Inc.*, 773 F.3d 423, 426 (2d Cir. 2014) (citing *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 283–84 (2005)). "'The *Rooker-Feldman* doctrine merely recognizes that 28 U.S.C. § 1331 is a grant of original jurisdiction, and does not authorize district courts to exercise appellate jurisdiction over state-court judgments,' a power reserved exclusively to the Supreme Court." *Gribbin v. N.Y. State Unified Court Sys.*, — F. App'x —, 2021 WL 864701, at *1 (2d. Cir. Mar. 9, 2021) (summary order) (quoting *Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 644 n.3 (2002)). In *Hoblock v. Albany County Board of Elections*, the Second Circuit clarified the four requirements for application of the *Rooker-Feldman* doctrine as follows:

> First, the federal-court plaintiff must have lost in state court. Second, the plaintiff must complain of injuries caused by a state-court judgment. Third, the plaintiff must invite district court review and rejection of that judgment. Fourth, the state-court judgment must have been rendered before the district court proceedings commenced—i.e., *Rooker-Feldman* has no application to federal-court suits proceeding in parallel with ongoing state-court litigation.

422 F.3d 77, 85 (2d Cir. 2005) (internal quotations and alterations omitted).

Defendant Grossman argues that Plaintiff is, in effect, challenging the state court landlord-tenant judgment because Grossman executed the eviction warrant only because the Appellate Term

lifted the stay on the state judgment on October 27, 2016.  Furthermore, Grossman points out that,

on November 3, 2016, after he executed the eviction without serving a second notice of eviction,

the state court denied Plaintiff's request for an Order to Show Cause ("OSC") restoring his

possession of the apartment.  In his affidavit in support of an OSC,[3] Plaintiff argued that an OSC

was warranted because "[t]he Marshal failed to serve/give an additional notice before eviction."

(Ex. A, OSC, Dkt. 30, at ECF 3.)  In denying the OSC application, the state court simply stated in

a handwritten notation that "[t]he Appellate Term denied respondent's motion for a stay on

10/27/2016."  (*Id.* at ECF 2.)  Thus, Grossman argues, because "Plaintiff's alleged injury did not,

and would not, exist absent the [landlord-tenant] [j]udgment and the denial of the OSC to Restore,"

"Plaintiff's claim cannot succeed unless this Court were to determine that Plaintiff was entitled to

be restored to possession of the Premises" and is thus barred by *Rooker-Feldman*.  (Defendant

Grossman's Reply in Support of Motion to Dismiss ("Grossman's Reply"), Dkt. 28, at 3.)

The Court disagrees.  Plaintiff does not challenge or seek reversal of the state court

judgment of eviction or denial of the OSC to reinstate possession.  Instead, he challenges

Defendant Grossman's alleged failure to adhere to proper procedures while *carrying out* the state

court judgment.  That the alleged procedural defect occurred while carrying out the state court

judgment does not mean the state court judgment *caused* the challenged defect.[4]  *See McKithen v.*

---

[3] As previously discussed, "[a]lthough courts are generally limited to examining the sufficiency of the pleadings on a motion to dismiss [pursuant to Rule 12(b)(6)], 'on a challeng[e] [to] the district court's subject matter jurisdiction [pursuant to Rule 12(b)(1)], the court may resolve disputed jurisdictional fact issues by reference to evidence outside the pleadings.'" *Flores v. S. Peru Copper Corp.*, 414 F.3d 233, 255 n.30 (2d Cir. 2003) (quoting *Filetech S.A. v. France Telecom S.A.*, 157 F.3d 922, 932 (2d Cir. 1998)).

[4] Defendant Grossman also argues that "his actions were produced by the [landlord-tenant] [a]ction and [were] inextricably inter[twined] with" that action (Grossman's Mot., Dkt. 18, at 2), thus justifying dismissal of the instant action pursuant to language in *Feldman*, which stated that the federal court "is in essence being called upon to review the state court decision" when the constitutional claims presented to the federal court "are inextricably intertwined with the state

*Brown*, 481 F.3d 89, 98 (2d Cir. 2007) ("[T]he applicability of the *Rooker-Feldman* doctrine turns not on the *similarity* between a party's state-court and federal-court claims (which is, generally speaking, the focus of ordinary preclusion law), but rather on the *causal relationship* between the state-court judgment and the injury of which the party complains in federal court." (emphases in original) (citing *Hoblock*, 422 F.3d at 87)). And because Defendant Grossman's failure to serve a second notice before executing the eviction was not an "action[] taken pursuant to a [state] court order," *see Hoblock*, 422 F.3d at 88, Plaintiff's challenge of that deficiency is not barred from this Court's jurisdiction by *Rooker-Feldman*. *See, e.g.*, *Dorce v. City of New York*, 460 F. Supp. 3d 327, 339 (S.D.N.Y. 2020) ("To the extent that the plaintiffs . . . claim that their injury was the deprivation of process to which they were entitled, their procedural due process claims are not barred by *Rooker-Feldman* . . . because their injuries were caused by the City's failure to provide notice of the action when the City commenced the [] proceedings, rather than by the state court judgments themselves."); *Mortimer v. Wilson*, No. 15-CV-7186 (KPF), 2020 WL 3791892, at *19 (S.D.N.Y. July 7, 2020) ("Although [plaintiff]'s claim may touch upon the [state court order], the underlying cause of her alleged injury is [defendant]'s failure to give notice, and not the Order itself."); *Ezagui v. City of New York*, 726 F. Supp. 2d 275, 290 (S.D.N.Y. 2010) ("Here, Plaintiff does not complain of an injury caused by a state court judgment; instead, he complains of an injury caused by Defendants' failure to give him notice of his due process rights[.]").

Relatedly, that the state court declined to reinstate Plaintiff's access to the premises after he pointed out Defendant Grossman's failure to serve a second notice of eviction (Ex. A, OSC,

---

court's denial in a judicial proceeding of a particular plaintiff's application[.]" 460 U.S. at 483 n.16. But, as the Second Circuit explained in *Hoblock*, relying on this "inextricably intertwined" language has led lower courts to apply *Rooker-Feldman* too broadly, for the phrase "has no independent content. It is simply a descriptive label attached to claims that meet the requirements" of *Rooker-Feldman*. *Hoblock*, 422 F.3d at 87.

Dkt. 30, at ECF 2) provides no bar to the instant claim.  The Court has considered whether the instant action could be construed as challenging the state court's denial of Plaintiff's OSC application and thus barred under *Rooker-Feldman*, and rejects that result.  In his OSC application, Plaintiff sought to restore possession of his apartment based on an alleged due-process violation; here, he seeks damages pursuant to Section 1983 for that violation—a claim on which he can prevail without a finding that the state court incorrectly denied the OSC.  While *Rooker-Feldman* precludes review of state-court judgments themselves, it does not preclude independent review of an alleged violation for which the state court denied a remedy.  The Second Circuit explained the distinction this way in *Hoblock*:

> Suppose a plaintiff sues his employer in state court for violating both state anti-discrimination law and Title VII and loses.  If the plaintiff then brings the same suit in federal court, he will be seeking a decision from the federal court that denies the state court's conclusion that the employer is not liable, but he will not be alleging injury from the state judgment.  Instead, he will be alleging injury based on the employer's discrimination.

422 F.3d at 87–88.  The subsequent federal action might be barred by ordinary preclusion principles, but not by *Rooker-Feldman*. *Id*. at 88 n.6.  The situation here is materially similar: Plaintiff requested a remedy in his OSC application from the state court by way of repossession, which was denied, and now he requests a remedy in a Section 1983 claim from this Court by way of damages.  As the Second Circuit held in *Hoblock*, "[t]he fact that the state court chose not to remedy the injury does not transform the subsequent federal suit on the same matter into an appeal, forbidden by *Rooker-Feldman*, of the state-court judgment." *Id*. at 88.

Accordingly, the Court concludes that the present action presents an independent federal claim against Defendant Grossman that averts dismissal for lack of jurisdiction under *Rooker-Feldman*.  However, as now discussed, it still must be dismissed for failure to state a claim under Rule 12(b)(6).

2.  Section 1983

Section 1983 "is not itself a source of substantive rights, but a method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes." *Conklin v. County of Suffolk*, 859 F. Supp. 2d 415, 438 (E.D.N.Y. 2012) (quoting *Baker v. McCollan*, 443 U.S 137, 144 n.3 (1979)); *accord Cornejo v. Bell*, 592 F.3d 121, 127 (2d Cir. 2010).  In order to maintain a civil rights action under Section 1983, a plaintiff must allege two essential elements.  First, the conduct challenged must have been "committed by a person acting under color of state law."  *Cornejo*, 592 F.3d at 127 (quoting *Pitchell v. Callan*, 13 F.3d 545, 547 (2d Cir. 1994)); *see also Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50 (1999) ("[T]he under-color-of-state-law element of § 1983 excludes from its reach merely private conduct, no matter how discriminatory or wrongful." (internal quotation marks and citation omitted)).  Second, the conduct complained of "must have deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States."  *Cornejo*, 592 F.3d at 127; *see also Snider v. Dylag*, 188 F.3d 51, 53 (2d Cir. 1999).

Defendant Grossman does not dispute that he was acting under color of state law when effectuating Plaintiff's eviction (*see generally* Grossman's Mot., Dkt. 18; Grossman's Reply, Dkt. 28), nor could he, *see Schaer v. City of New York*, No. 09-CV-7441 (CM) (MHD), 2011 WL 1239836, at *11 (S.D.N.Y. Mar. 25, 2011) ("The position of City Marshal exists only because it was created by state law.  That law gives City Marshals the power to carry out certain state functions that private citizens are not allowed to perform. . . . [E]nforcing the traffic laws and civil judgments are quintessentially state functions.").  He does argue, however, that Plaintiff has failed to state a claim for any violation of his substantive due process, procedural due process, or equal protection rights.  The Court agrees, and dismisses Plaintiff's Section 1983 claim against Defendant Grossman pursuant to Rule 12(b)(6).

a.   Substantive Due Process

"[T]he touchstone of due process is protection of the individual against arbitrary action of government." *Weisshaus v. Cuomo*, — F. Supp. 3d —, 2021 WL 103481, at *11 (E.D.N.Y. Jan. 11, 2021) (quoting *City of Sacramento v. Lewis*, 523 U.S. 833, 845–46 (1998)).   To bring a substantive due process claim, a plaintiff must plead (1) the deprivation of a constitutional right, and (2) state action that "was so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." *Hurd v. Fredenburgh*, 984 F.3d 1075, 1087 (2d Cir. 2021) (quoting *Southerland v. City of New York*, 680 F.3d 127, 151 (2d Cir. 2012)).   The failure to serve a second notice of eviction may constitute negligence, but does not arise to the level of being "so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." *See Velez v. Levy*, 401 F.3d 75, 93 (2d Cir. 2005) (internal quotation marks and citation omitted); *see also Lewis*, 523 U.S. at 849 ("[L]iability for negligently inflicted harm is categorically beneath the threshold of constitutional due process.").   Plaintiff thus fails to allege a claim under substantive due process.

b.   Procedural Due Process

"To prevail on a procedural due process claim, a plaintiff must (1) 'identify a property right,' (2) 'show that the state has deprived him of that right,' and (3) 'show that the deprivation was effected without due process.'" *Tang v. Visnauskas*, — F. App'x —, 2021 WL 688293, at *1 (2d Cir. Feb. 23, 2021) (summary order) (quoting *Mehta v. Surles*, 905 F.2d 595, 598 (2d Cir. 1990)).   Where, as here, the alleged "state conduct in question is random and unauthorized, the state satisfies procedural due process requirements so long as it provides meaningful post-deprivation remedy." *Rivera-Powell v. N.Y.C. Bd. of Elections*, 470 F.3d 458, 465 (2d Cir. 2006) (citing *Hellenic Am. Neighborhood Action Comm. ("HANAC") v. City of New York*, 101 F.3d 877, 880 (2d Cir. 1996)); *see also id.* at 466 (noting that "random and arbitrary" state conduct is distinct from conduct "pursuant to established state procedures").

11

The Court finds that the New York State provides an adequate remedy to Plaintiff's claimed deprivation. In New York, tenants are protected "by the continuing jurisdiction of the Civil Court over the landlord/tenant disputes." *Stern v. Regency Towers, LLC*, 886 F. Supp. 2d 317, 323–24 (S.D.N.Y. 2012) (citing *Matter of Brusco v. Braun*, 84 N.Y.2d 674, 681–82 (1994)). The factual account in Plaintiff's Complaint lacks detail regarding the lead-up to Defendant Grossman's service of the notice of eviction, but the Court infers from Plaintiff's references to "the final judgment and warrant of eviction," and the Appellate Term's involvement (*see* Compl., Dkt. 1, at 5) that the judgment of eviction was obtained pursuant to "state court proceedings in which [Plaintiff] was given [an] opportunity to contest, and did contest, the legality of his eviction," *Stern*, 886 F. Supp. 2d at 324.[5] Importantly, "the Civil Court may, in appropriate circumstances, vacate the warrant of eviction and restore the tenant to possession *even after the warrant has been executed*." *Id.* (emphasis in original) (quoting *Matter of Brusco*, 84 N.Y.2d at 681–82). Indeed, Plaintiff had made use of the state-court remedies throughout the eviction process, including when he requested and obtained from the Appellate Term a stay of his eviction. (*See* Compl., Dkt. 1, at 5–6; *see also id.* Ex. 1, Dkt. 1, at ECF 10.) The Court sees no reason why

---

[5] Though the Court relies on only facts presented in the pleadings when making this inference in evaluating the instant motions to dismiss, Defendants' briefing is consistent with this conclusion. (*See* Grossman's Mot., Dkt. 18, at 1 (noting that Plaintiff "lost a series of motions, a trial, and at least two appeals" in the landlord-tenant action); City Defendants' Motion, Dkt. 17, at 1 ("This action stems from a 2016 Warrant of Eviction that was issued by the New York Civil Court-Housing Court directing that a New York City Marshal evict Plaintiff from his apartment.").)

Plaintiff could not have continued using the state-court remedies following the execution of the eviction warrant.[6],[7]

Because "Plaintiff does not allege that the state procedures in place, if strictly complied with, would be insufficient due process under the Fourteenth Amendment," his procedural due process claim is dismissed for failure to state a claim. *See Terio v. Johann*, No. 05-CV-5918 (RPP), 2006 WL 2819659, at *7 (S.D.N.Y. Sept. 29, 2006) (dismissing, *inter alia*, procedural due process claim), *aff'd*, 257 F. App'x 374 (2d Cir. 2007).

c.  Equal Protection

To bring an equal protection claim, Plaintiff must plead "that he was treated differently than others similarly situated as a result of intentional or purposeful discrimination . . . [and] that the disparity in treatment cannot survive the appropriate level of scrutiny[.]" *Phillips v. Girdich*, 408 F.3d 124, 129 (2d Cir. 2005) (citations omitted).  Plaintiff fails to allege that he was treated differently from similarly situated individuals as a result of discrimination, and thus cannot bring an equal-protection claim.

Therefore, Plaintiff's Section 1983 claim against Defendant Grossman is dismissed for failure to state a claim, and because the Court has dismissed Plaintiff's federal claim against

---

[6] The Court does not consider information outside the pleadings when granting Defendant Grossman's Rule 12(b)(6) motion, but notes that Plaintiff in fact exercised this post-deprivation remedy when he made an application for an OSC to restore possession on the same day the warrant was executed.  (*See* Ex. A, OSC, Dkt. 30, at ECF 3.)  That Plaintiff's use of state procedures was ultimately unsuccessful does not mean the procedures themselves were inadequate.

[7] The Court further notes that an alternative state remedy may have been available to Plaintiff through an Article 78 proceeding.  *See Grillo v. N.Y.C. Transit Auth.*, 291 F.3d 231, 234 (2d Cir. 2002) ("This court has 'held on numerous occasions' that where, as here, a party sues the state and its officials and employees for the arbitrary and random deprivation of a property or liberty interest, 'an Article 78 proceeding is a perfectly adequate postdeprivation remedy.'" (quoting *HANAC*, 101 F.3d at 880–81)).

Defendant Grossman, the Court declines to exercise supplemental jurisdiction over Plaintiff's state-law claims against Grossman. *See Liverpool v. City of New York*, No. 19-CV-5527 (CM), 2019 WL 3745734, at *3 n.2 (S.D.N.Y. Aug. 7, 2019) ("Under 28 U.S.C. § 1367(c)(3)[,] a district court may decline to exercise supplemental jurisdiction over state-law claims when it has dismissed all claims over which it has original jurisdiction." (internal quotations omitted)). The state-law claims are thus dismissed without prejudice to being brought in state court.[8]

## III.  *Monell* Claim Against the City Defendants

A municipality can be liable under Section 1983 if the plaintiff can show that a municipal policy or custom caused the deprivation of his constitutional rights. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690–91 (1978). Four types of practices may give rise to a Section 1983 claim against a municipality:

> (1) a formally adopted municipal policy; (2) the actions or decisions of a municipal official with final policymaking authority; (3) a practice so persistent and widespread that it constitutes a custom or usage; and (4) a failure by official policy-makers to properly train or supervise subordinates to such an extent that it amounts to deliberate indifference.

---

[8] In his opposition to Defendants' motions to dismiss, Plaintiff requests the Court "to convert the basis for jurisdiction for the state[-]law claims for this suit from 28 U.S.C. § 1367 to 28 U.S.C. § 1332" because Plaintiff "is a foreign citizen (citizen of [a] foreign state)." (Pl.'s Opp., Dkt. 24, at 6.) The Court denies that request. Besides citing no authority suggesting the Court may entertain such requests to "convert the basis for jurisdiction," Plaintiff fails to establish that the Court would have had diversity jurisdiction even had it been invoked in the Complaint. He alleges no facts in either his Complaint or opposition to Defendants' motions to dismiss "demonstrating that complete diversity of citizenship exists between all parties to the action," so the Court cannot determine the existence of diversity jurisdiction. *See Obstfeld v. Schwartz*, 621 F. Supp. 2d 87, 93 (S.D.N.Y. 2008) (citing *Advani Enterprises, Inc. v. Underwriters at Lloyds*, 140 F.3d 157 (2d Cir. 1998)); *see also Hertz Corp. v. Friend*, 559 U.S. 77, 96 (2010) ("The burden of persuasion for establishing diversity jurisdiction, of course, remains on the party asserting it." (citation omitted)).

*Doe v. City of New York*, No. 18-CV-670 (ARR) (JO), 2018 WL 3824133, at *8 (E.D.N.Y. Aug.

9, 2018) (internal quotation marks and citation omitted); *see also Safran v. Singas*, No. 20-CV-

4537 (PKC) (SMG), 2020 WL 7125232, at *4 (E.D.N.Y. Dec. 4, 2020).  Critically, "a prerequisite

to municipal liability under *Monell* is an underlying constitutional violation by a state actor."

*Henry-Lee v. City of New York*, 746 F. Supp. 2d 546, 567 (S.D.N.Y. 2010); *see also Segal v. City

of New York*, 459 F.3d 207, 219 (2d Cir. 2006) ("*Monell* does not provide a separate cause of

action for the failure by the government to train its employees; it *extends* liability to a municipal

organization where that organization's failure to train, or the policies or customs that it has

sanctioned, led to an independent constitutional violation.").

    As discussed above, Plaintiff fails to establish a constitutional violation by any state actor,

which dooms his *Monell* claim.  Furthermore, even if he had sufficiently alleged an underlying

constitutional violation, his *Monell* claim would fail.  The entirety of Plaintiff's claims against the

City Defendants consists of the following statement:

> [Plaintiff's] injuries are [] unlawfully caused by the policy and customs of [the City
> Defendants].  Defendant [] Grossman's ignoring and being ignorant of law and
> policy is a direct result of the failures of [the City Defendants] to provide adequate
> training, exercise necessary supervision, and properly implement policies and
> internal process to ensure the city marshal [] comply with the legal and policy
> requirements as to an eviction . . . and thus all three [D]efendants are liable for the
> damages.

(Compl., Dkt. 1, at 6.)

    Plaintiff's "boilerplate assertions" are plainly insufficient to state a *Monell* claim.[9]  *See

Dumel v. Westchester County*, No. 19-CV-2161 (KMK), 2021 WL 738365, at *6 (S.D.N.Y. Feb.

---

[9] The failure to train employees "may constitute an official policy or custom if the failure
amounts to 'deliberate indifference' to the rights of those with whom the city employees interact."
*Wray v. City of New York*, 490 F.3d 189, 195 (2d Cir. 2007) (citing *City of Canton v. Harris*, 489
U.S. 378, 388 (1989)).  To establish deliberate indifference with respect to failure to provide
training or necessary supervision, a plaintiff must establish that: (1) "a policymaker knows to a
moral certainty that city employees will confront a particular situation"; (2) "the situation either

25, 2021) (collecting cases); *Triano v. Town of Harrison*, 895 F. Supp. 2d 526, 540 (S.D.N.Y. 2012) (same); *Bradley v. City of New York*, No. 08-CV-1106 (NGG), 2009 WL 1703237, at *3 (E.D.N.Y. June 18, 2009) ("The Complaint's conclusory, boilerplate language—that the City fail[ed] to adequately train, discipline, and supervise employees and fail[e]d to promulgate and put into effect appropriate rules and regulations applicable to the duties and behavior of its employees—is insufficient to raise an inference of the existence of a custom or policy." (internal quotation marks and citations omitted)).[10]  Plaintiff's *Monell* claims against the City Defendants are thus dismissed.[11]

_____

presents the employee with a difficult choice of the sort that training or supervision will make less difficult or there is a history of employees mishandling the situation"; and (3) "the wrong choice by the city employee will frequently cause the deprivation of a citizen's constitutional rights."  *Id.* at 195–96 (internal quotation marks and citations omitted).  Plaintiff clearly fails to plead these elements.

[10] In addition to arguing that he has sufficiently pleaded a *Monell* claim, Plaintiff states that, during discovery, he will request records relating to "any administrative complaints filed with the [City Defendants] involving the issues of the proper and adequate service[] of notices of eviction[.]" (Pl.'s Opp., Dkt. 24, at 6.) However, as the City Defendants correctly note, subsequent discovery does not cure an otherwise inadequate pleading.  *See Ashcroft*, 556 U.S. at 678–79 ("Rule 8 . . . does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.").

[11] The Court further notes that Plaintiff's claims against the Department of Investigation must also be dismissed on the ground that it is not suable as an agency of the City of New York.  *See* N.Y.C. Charter § 396 ("[A]ll actions and proceedings for the recovery of penalties for the violation of any law shall be brought in the name of the city of New York and not in that of any agency, except where otherwise provided by law."); *Davis v. N.Y.C. Dep't of Corr.*, No. 17-CV-3863 (MKB), 2017 WL 5634123, at *2 (E.D.N.Y. Nov. 22, 2017) (dismissing claims against, *inter alia*, the Department of Investigation (citing N.Y.C. Charter, § 396)); *Artec Constr. & Dev. Corp. v. N.Y.C. Dep't of Hous. Pres. & Dev.*, No. 15-CV-9494 (KPF), 2017 WL 782911, at *4 (S.D.N.Y. Feb. 27, 2017) (same).

## CONCLUSION

For the foregoing reasons, Plaintiff's Complaint is dismissed in its entirety.  The Clerk of Court is respectfully directed to enter judgment and close this case.

SO ORDERED.

/s/ Pamela K. Chen
Pamela K. Chen
United States District Judge

Dated: March 22, 2021
       Brooklyn, New York

17