UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------x
HONG TANG,

                              Plaintiff,

                                                        **MEMORANDUM & ORDER**
            - against -                                 19-CV-6099 (PKC) (PK)

JUSTIN P. GROSSMAN, in his individual and
official capacities (as City Marshal); NEW
YORK   CITY   DEPARTMENT   OF
INVESTIGATION;   and   CITY   OF   NEW
YORK,

                              Defendants.
-------------------------------------------------------x
PAMELA K. CHEN, United States District Judge:

          Plaintiff Hong Tang, an attorney representing himself *pro se*, filed this action on October

29, 2019, alleging various constitutional and state-law claims stemming from a 2016 eviction.  On

March 22, 2021, this Court granted Defendants' motions to dismiss, and the case was closed on

March 23, 2021.  Plaintiff now moves this Court to reconsider its March 22, 2021 Memorandum

& Order, vacate the judgment against him, and grant him leave to file an amended complaint.  For

the reasons explained below, Plaintiff's motions are denied in all respects, except as to

reconsidering the Court's reasoning for finding a lack of diversity jurisdiction under 28 U.S.C.

§ 1332.  On that point, however, the Court still concludes that it does not have diversity jurisdiction

over this action, and thus it adheres to its previous decision to dismiss and close this case.

                              **BACKGROUND**

**I.      Dismissal of Original Complaint**

          On October 6, 2016, Defendant Justin P. Grossman, a New York City Marshal, served

Plaintiff with a notice of eviction from the apartment he was renting in Manhattan.  *Tang v.

Grossman*, No. 19-CV-6099 (PKC) (PK), 2021 WL 1091908, at *1 (E.D.N.Y. Mar. 22, 2021).  On

                                      1

October 13, 2016, the Appellate Term of the New York Supreme Court stayed the eviction until October 27, 2016.  *Id.*  On November 3, 2016, Grossman "took legal possession of the premises . . . by surprise."  *Id.* (quoting Complaint ("Compl."), Dkt. 1, at 6.)  Plaintiff alleged that the eviction violated his due process and equal protection rights, and constituted various state law torts, because Grossman did not give Plaintiff a second eviction notice.  The New York City Marshals Handbook of Regulations states that, where a court order stays an eviction and the stay later expires, the marshal is required give the tenant another notice of eviction, unless the court specifically waives that requirement.  *Id.*  Plaintiff further alleged that he specifically told Grossman "that no additional notice of eviction had been given yet and [that] an additional notice . . . [wa]s required by law and policy."  *Id.* (quoting Compl., Dkt. 1, at 6.)  In addition to Grossman, Plaintiff named as Defendants the New York City Department of Investigations (the "DOI") and City of New York (the "City") (collectively, the "City Defendants"), claiming that they were also liable for the violations of his rights pursuant to *Monell v. Department of Social Services*, 436 U.S. 658 (1978).  *Id.*  Attached to his Complaint, Plaintiff submitted an April 14, 2000 directive from a civil court judge, "in conjunction with the Department of Investigation" (the "Civil Court Directive"), which stated that there was "still some confusion" about the requirement to give a tenant a second notice of eviction after a stay was lifted, yet reiterated the policy from the Marshals Handbook that another eviction notice should be given before evicting a tenant after a stay of eviction has been lifted.  (Compl., Dkt. 1 at ECF 20.[1])  In addition to his constitutional claims against Grossman, the DOI, and the City, Plaintiff brought state-law claims against Grossman for (i) unlawful eviction under Real Property Actions & Proceedings Law § 853, (ii) negligence,

---

[1] Citations to "ECF" refer to the pagination generated by the Court's CM/ECF docketing system and not the document's internal pagination.

2

(iii) intentional infliction of emotional distress, (iv) negligent infliction of emotional distress, (v) conversion, and (vi) trespass to chattels. *Tang*, 2021 WL 1091908, at *1. Plaintiff's Complaint asserted that this Court had subject-matter jurisdiction over the Plaintiff's due process and equal protection claims because they arose under federal law, 28 U.S.C. § 1331 ("federal question jurisdiction"), and that the Court thus had pendant jurisdiction over Plaintiff's related state-law claims pursuant to 28 U.S.C § 1367. (Compl., Dkt. 1, at 3–4.)

On March 23, 2021, this Court dismissed Plaintiff's Complaint in its entirety. *Id.* at *9. It found that Plaintiff had failed to state a substantive due process claim because "[t]he failure to serve a second notice of eviction may constitute negligence, but does not []rise to the level of being 'so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience.'" *Id.* at *6 (quoting *Velez v. Levy*, 401 F.3d 75, 93 (2d Cir. 2005)). The Court also concluded that Plaintiff failed to state a procedural due process claim because the challenged state action was "random and unauthorized"; that, in such cases, "the state satisfies procedural due process requirements so long as it provides [a] meaningful post-deprivation remedy"; and that New York provides meaningful post-deprivation remedies when people are wrongfully evicted. *Id.* at *6–7 (quoting *Rivera-Powell v. N.Y.C. Bd. of Elections*, 470 F.3d 458, 465 (2d Cir. 2006)). As to Plaintiff's equal protection claim, the Court determined that he had not, as necessary to state a claim, pleaded that "he was treated differently than others similarly situated as a result of intentional or purposeful discrimination." *Id.* at *7 (quoting *Phillips v. Girdich*, 408 F.3d 124, 129 (2d Cir. 2005)). With respect to Plaintiff's *Monell* claims, the Court noted that, because Plaintiff had failed to plead a constitutional violation by any state actor, his *Monell* claims were insufficient; and, even if Plaintiff had sufficiently alleged an underlying constitutional violation, his *Monell* claims would fail because the entirety of his allegations against the City Defendants were

3

"boilerplate assertions," which "are plainly insufficient to state a *Monell* claim." *Id.* at *8. Because the Court dismissed all of Plaintiff's federal claims, it "decline[d] to exercise supplemental jurisdiction over Plaintiff's state-law claims against Grossman." *Id.* at *7.

## II.     Motion for Reconsideration and Request for Leave to Amend

Plaintiff now moves for reconsideration under Federal Rules of Civil Procedure ("Rules") 59(e) and 60,[2] and for leave to file an amended complaint pursuant to Rule 15(a).  (Motion for Reconsideration, to Alter/Amend a Judgment, and for Relief from a Judgment/Order and Motion for Leave to File an Amended Complaint ("Recon. Br."), Dkt. 33, at 1.)  In his motions, Plaintiff objects to all of this Court's substantive rulings on his constitutional claims, argues that it was error for this Court to dismiss the case without addressing Plaintiff's request to amend his Complaint, and also challenges this Court's decision not to "convert" the basis for jurisdiction from federal question to diversity and then exercise jurisdiction over Plaintiff's state law claims against Grossman.  (*Id.* at 1–9.)

The City Defendants argue that Plaintiff's motions should be denied because he has not (1) demonstrated that this Court overlooked controlling decisions or data; (2) submitted a proposed amended complaint for review; or (3) stated what new facts he could allege to address the deficiencies identified by the Court in its decision on the motions to dismiss.  (City Defendants' Memorandum of Law in Opposition to Plaintiff's Motion for Reconsideration and Leave to File an Amended Complaint ("City Opp."), Dkt. 35, at 2, 10.)  Grossman has also filed an opposition, making similar arguments, and adding that any request to amend based on the state law claims would be futile because those claims were time barred.  (Memorandum of Law in Opposition to

---

[2] Plaintiff also cites to Rule 6.3 of the local rules for the Eastern District of New York, but that rule merely sets filing deadlines for motions for reconsideration.

Plaintiff's Motion for Reconsideration, to Alter/Amend a Judgment, and For Relief from a Judgment/Order, and Motion for Leave to File an Amended Complaint ("Grossman Opp."), Dkt. 36, at 2–11.)  Grossman also argues that Plaintiff cannot allege sufficient facts to support some of his state law claims.  (*Id.* at 8–9.)

In his reply, Plaintiff largely makes the same arguments as in his reconsideration motion, refusing to address the merits of Grossman's futility arguments and instead arguing that this Court cannot consider such arguments at this juncture.  (Initial Reply Memorandum ("Reply Mem. I"), Dkt. 37, at 1–5.)  At the end of Plaintiff's reply, he notes that the scheduling order issued by this Court after Plaintiff had filed the present motions

> granted [D]efendants 34 days to respond to [P]laintiff's motion, but did not indicate the deadline for [P]laintiff to reply.  [P]laintiff hereby files this initial reply memorandum pursuant to Local Civil Rule 6.1(b), and also hereby requests this [C]ourt for 17 days . . . to file his final reply.

(*Id.* at 5.)  Though the Court never ruled on that request, Plaintiff filed a second reply, which still did not address Grossman's futility arguments.  (Final Reply Memorandum (Reply Mem. II"), Dkt. 38.)  Despite filing two replies after the City Defendant's opposition, Plaintiff has never submitted a proposed amended complaint or stated what new facts he could allege to address the deficiencies identified by this Court in its decision on the earlier motions to dismiss.

## LEGAL STANDARDS

### I.    Rule 59(e)

"Rule 59(e) allows a litigant to file a 'motion to alter or amend a judgment.'"  *Banister v. Davis*, 140 S. Ct. 1698, 1703 (2020) (quoting Fed. R. Civ. P. 59(e)).  "A party may move for reconsideration and obtain relief only when the party identifies an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice."  *Cho v. Blackberry Ltd.*, 991 F.3d 155, 170 (2d Cir. 2021) (brackets omitted).

"The standard for granting such a motion is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Id.* "Rule 59 is not a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a second bite at the apple." *Analytical Survs., Inc. v. Tonga Partners, L.P.*, 684 F.3d 36, 52 (2d Cir. 2012) (internal quotation marks and ellipsis omitted), *as amended* (July 13, 2012). "[C]ourts will not address new arguments or evidence that the moving party could have raised before the decision issued." *Banister*, 140 S. Ct. at 1703 (citing 11 C. Wright, A. Miller, & M. Kane, Federal Practice and Procedure § 2810.1, pp. 163–64 (3d ed. 2012)).

## II.     Rule 60(b)

Under Rule 60(b), a party may seek relief from a final judgment on the following six grounds:

> (1) mistake, inadvertence, surprise, or excusable neglect;
>
> (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);
>
> (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;
>
> (4) the judgment is void;
>
> (5) the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or
>
> (6) any other reason that justifies relief.

Fed. R. Civ. P. 60(b). "Relief under Rule 60(b) is generally not favored and is properly granted only upon a showing of exceptional circumstances." *Ins. Co. of N. Am. v. Pub. Serv. Mut. Ins. Co.*, 609 F.3d 122, 131 (2d Cir. 2010).

6

Plaintiff does not specify under what subsection of Rule 60(b) he seeks reconsideration, but he does not argue that he possesses newly discovered evidence; that there was fraud, misrepresentation, or misconduct by an opposing party; that the judgment is void; or that the judgment has been satisfied, released, or discharged.  Accordingly, the Court examines Plaintiff's motion under Rules 60(b)(1) and (6).

Rule 60(b)(1) allows a district court to correct "legal errors by the court," *United Airlines, Inc. v. Brien*, 588 F.3d 158, 175 (2d Cir. 2009), or "the district court's own mistake of fact," *Niederland v. Chase*, 425 F. App'x 10, 11 (2d Cir. 2011) (summary order).  Rule 60(b)(6) is "a catch-all provision that is properly invoked only when there are extraordinary circumstances justifying relief, when the judgment may work an extreme and undue hardship, and when the asserted grounds for relief are not recognized in clauses (1)–(5) of the Rule." *Metzler Inv. GmbH v. Chipotle Mexican Grill, Inc.*, 970 F.3d 133, 143 (2d Cir. 2020) (internal quotation marks omitted).  Where a party's motion for reconsideration is captured by Rule 60(b)(1), that party cannot also seek reconsideration under Rule 60(b)(6).  *Stevens v. Miller*, 676 F.3d 62, 67 (2d Cir. 2012).  "Further, a Rule 60(b) motion is properly denied where it seeks only to relitigate issues already decided." *Pastor v. P'ship for Children's Rts.*, 856 F. App'x 343, 345 (2d Cir. 2021) (summary order) (citing *Zerman v. Jacobs*, 751 F.2d 82, 84–85 (2d Cir. 1984)).

## III.    Rule 15(a)

Under Rule 15(a), "leave to amend shall be freely given when justice so requires." *TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 505 (2d Cir. 2014); *see* Fed. R. Civ. P. 15(a). Nevertheless, "it is within the sound discretion of the district court to grant or deny leave to amend," *Green v. Mattingly*, 585 F.3d 97, 104 (2d Cir. 2009), and leave to amend may be denied for, among other reasons, futility, *Williams v. Citigroup, Inc.*, 659 F.3d 208, 213–14 (2d Cir. 2011). Amendment is futile where a Plaintiff cannot, in good faith, add allegations that would enable the

complaint to survive a motion to dismiss.  *Quinio v. Aala*, No. 19-CV-4686 (PKC) (SJB), 2022 WL 21125, at *5 (E.D.N.Y. Jan. 3, 2022) (citing, *inter alia*, *Kassner v. 2nd Ave. Delicatessen, Inc.*, 496 F.3d 229, 235 (2d Cir. 2007)).

Furthermore, when a party seeks leave to amend after judgment has been entered, before the Court can grant leave to amend, the party "must first have the judgment vacated or set aside pursuant to Fed. R. Civ. P. 59(e) or 60(b)."  *Ruotolo v. City of New York*, 514 F.3d 184, 191 (2d Cir. 2008).  "Rule 15(a)'s liberal amendment policy should not 'be employed in a way that is contrary to the philosophy favoring finality of judgments and the expeditious termination of litigation.'"  *Id.* (quoting *Nat'l Petrochemical Co. of Iran v. M/T Stolt Sheaf*, 930 F.2d 240, 244–45 (2d Cir. 1991)).[3]

## DISCUSSION

### I.   Substantive Due Process

Plaintiff argues that this Court made a "clear error of fact" in concluding that Grossman's actions, as alleged, did not rise to the level of being "so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience," and thus did not rise to the level of a substantive due process claim.  (Recon. Br., Dkt. 33, at 1–2.)  In support of that argument, Plaintiff points out that he alleged that, as Grossman was evicting him, Plaintiff informed Grossman that no additional notice had been given to him, and thus the eviction violated law and policy.  (*Id.* at 2.)

---

[3] Plaintiff cites a Fourth Circuit case for the proposition that a motion to amend a complaint should be evaluated under the same standard whether it is filed pre- or post-judgment.  (Recon. Br., Dkt. 33, at 9.)  Regardless of the accuracy of Plaintiff's representation of that case, this Court is bound by the standards articulated by the Second Circuit.

Plaintiff stressed the same allegation in his opposition to the earlier motions to dismiss. (Response (MEMORANDUM) In Opposition Of Defendants' Motion to Dismiss ("MTD Opp."), Dkt. 24, at 4–5.)  In the Court's decision on those motions, it specifically noted Plaintiff's allegation about informing Grossman about the need for, and lack of, a second eviction notice, and accepted it as true.  *Tang*, 2021 WL 1091908, at *1 ("Defendant Grossman [evicted Plaintiff] despite Plaintiff having informed Defendant that no additional notice of eviction had been given yet and that an additional notice was required by law and policy." (internal quotation marks, brackets, and ellipsis omitted) (quoting Compl, Dkt. 1, at 6)).  This Court thus reached its conclusion that Grossman's actions did not rise to the level of a due process violation while considering the exact same fact that Plaintiff stresses in his motion for reconsideration.

Plaintiff points to no fact that this Court overlooked, and cites no decision—let alone a "controlling decision[]"—where a court found that a substantive due process violation had been committed under similar facts to those alleged here.  *Cho*, 991 F.3d at 170.  Because Plaintiff is merely trying to "relitigat[e] old issues," on the same facts, and take a "second bite at the apple," *Analytical Survs.*, 684 F.3d at 52, his motion for reconsideration with respect to Plaintiff's substantive due process claim under Rule 59(e) must be denied.  Likewise, Plaintiff has not identified a "legal error[]," *Brien*, 588 F.3d at 175, or "mistake of fact," *Niederland*, 425 F. App'x at 11, by the Court that would make reconsideration under Rule 60(b)(1) appropriate.  And since Plaintiff's only argument on this claim is that the Court made an error of fact, which is cognizable under Rule 60(a)(1), Plaintiff may not seek reconsideration under Rule 60(b)(6).  *Stevens*, 676 F.3d at 67.  Regardless, Plaintiff has not identified any "extraordinary circumstances" that would warrant relief under Rule 60(b)(6).  *Metzler*, 970 F.3d at 143.

Since Plaintiff has not shown that "the judgment [should be] vacated or set aside pursuant to Fed. R. Civ. P. 59(e) or 60(b)," granting Plaintiff leave to amend on this claim would also be inappropriate. *Ruotolo*, 514 F.3d at 191. Plaintiff objects to the fact that the Court did not specifically address his request for leave to amend the Complaint, which was made in his opposition to the motions to dismiss.[4] (Recon. Br., Dkt. 33, at 6.) However, "[i]t is within the court's discretion to deny leave to amend implicitly by not addressing the request when leave is requested informally in a brief filed in opposition to a motion to dismiss." *In re Tamoxifen Citrate Antitrust Litigation*, 466 F.3d 187, 220 (2d Cir. 2006), *abrogated on other grounds by F.T.C. v. Actavis, Inc.*, 570 U.S. 136 (2013).

Here, it is abundantly clear that allowing Plaintiff leave to amend to state a substantive due process claim would have been futile: Plaintiff has now moved for reconsideration and leave to amend without submitting a proposed amended complaint or proffering new facts he could allege to address the deficiencies identified by this Court, despite the City Defendants having pointed this out in their opposition to the present motion (City Opp., Dkt. 35, at 10), and despite Plaintiff having filed *two* replies. Instead, in his motion for reconsideration and two replies, Plaintiff relies on the same fact that the Court already found insufficient, *i.e.*, that, while being evicted, Plaintiff told Grossman about the requirement to provide a second notice, which Plaintiff had not received. (Recon. Br., Dkt. 33, at 1–2); *Tang*, 2021 WL 1091908, at *1. Plaintiff has thus given the Court no reason to believe that it was error to deny his request for leave to amend with respect to his substantive due process claim.

---

[4] The Court notes that Plaintiff's request to amend his Complaint came in the context of Plaintiff discussing his state law claims, and more specifically in the context of Plaintiff arguing that the Court should exercise diversity jurisdiction under 28 U.S.C. § 1332. (MTD Opp., Dkt. 24, at 5–6.) For the sake of completeness, however, the Court analyzes his earlier request to amend as if it applied to all of his claims.

## II.   Procedural Due Process

Plaintiff argues that this Court's conclusion that "the state conduct in question [was] random and unauthorized," and thus the state satisfied procedural due process by providing adequate post-deprivation remedies, was "a clear error of both fact and law." (Recon Br., Dkt. 33, at 2–3 (emphasis removed).)   Plaintiff asserts that the Civil Court Directive attached to his Complaint—which this Court did not directly discuss in its decision on the motions to dismiss— demonstrated that the eviction was not "random and unauthorized" but "actually based on established state procedures." (*Id.* at 3.)  That directive, however, demonstrates the opposite.  It acknowledges that there had been "some confusion" around the policy of providing a second notice—suggesting some "random and unauthorized" violations of that policy—and reiterated the policy to be followed—*i.e.*, the "established state procedure" of giving a second notice. (Compl., Dkt. 1, at ECF 20.)  Rather than suggest that this Court made an "error of fact" when it concluded that "the state conduct in question [was] random and unauthorized," *Tang*, 2021 WL 1091908, at *6 (quoting *Rivera-Powell*, 470 F.3d at 465), the Directive directly supports that conclusion.

Plaintiff also argues that post-deprivation remedies of any sort are inadequate as a matter law in the context of evictions because of the magnitude of the liberty interest at stake. (Recon. Br., Dkt. 33, at 4–5.)  For that proposition, Plaintiff relies on a Sixth Circuit case that held that, in the context of "an eviction without notice," "postdeprivation remedies of any sort would be inadequate." *Thomas v. Cohen*, 304 F.3d 563, 580 (6th Cir. 2002).[5]  First, Sixth Circuit precedent

---

[5] Plaintiff's citation to this case confusingly suggests that this holding quoted the Supreme Court's decision in *United States v. James Daniel Good Real Prop.*, 510 U.S. 43 (1993). (Recon. Br., Dkt. 33, at 5.)  In reaching its holding, the *Thomas* court did quote the *James Daniel* Court's discussion of the "right to maintain control over one's home." *Thomas*, 304 F.3d at 580 (brackets omitted) (quoting *James Daniel*, 510 U.S. at 44).  The *James Daniel* Court, however, did not hold that "postdeprivation remedies of any sort would be inadequate" in the context of residential

is not binding on this Court.  *Heffernan v. Straub*, 655 F. Supp. 2d 378, 380 (S.D.N.Y. 2009) ("Controlling decisions . . . do not include decisions from other circuits.").  Second, and more importantly, Plaintiff's argument relies on the alleged state action not being "random and unauthorized."  Even under Sixth Circuit precedent after *Thomas*, to prevail on a procedural due process claim where the alleged state action can be fairly characterized only as "random and unauthorized," a plaintiff must demonstrate that any post-deprivation procedure offered by the state was inadequate.  *Warren v. City of Athens, Ohio*, 411 F.3d 697, 709 (6th Cir. 2005).  Plaintiff has utterly failed to do so here.

Accordingly, as with his substantive due process claim, Plaintiff has failed to point to any "controlling decisions or data that the court overlooked," and thus reconsideration would be inappropriate under Rule 59(e) with respect to his procedural due process claim, as well.  *Cho*, 991 F.3d at 170.  Likewise, Plaintiff has not identified a "legal error[]," *Brien*, 588 F.3d at 175, or "mistake of fact," *Niederland*, 425 F. App'x at 11, made by this Court, so reconsideration under Rule 60(b)(1) is unwarranted.  And since Plaintiff's request for reconsideration of his procedural due process claim is based on alleged "error of both fact and law" (Recon Br., Dkt. 33, at 2–3 (emphasis removed)), both of which are cognizable under Rule 60(b)(1), reconsideration under Rule 60(b)(6) would be inappropriate, *Stevens*, 676 F.3d at 67.  Regardless, Plaintiff has failed to demonstrate the type of "exceptional circumstances" necessary for reconsideration under any subsection of Rule 60(b).  *Ins. Co. of N. Am.*, 609 F.3d at 131.  Instead, Plaintiff "seeks only to relitigate issues already decided," a request that is "properly denied."  *Pastor*, 856 F. App'x at 345.

---

evictions, or in any context, for that matter.  Even if it had, however, that holding would be irrelevant in the context of "random and unauthorized" state action, as discussed above.

Since Plaintiff has failed to demonstrate that the dismissal of his procedural due process claim should be "vacated or set aside pursuant to Fed. R. Civ. P. 59(e) or 60(b)," his request for leave to amend must also be rejected with respect to this claim. *Ruotolo*, 514 F.3d at 191. And, despite ample opportunity to do so, Plaintiff has failed to demonstrate that there are any facts that he could add to his Complaint to adequately allege a procedural due process claim, thus failing to show that it was error to deny his leave to amend in the first instance.

## III.    Equal Protection

Plaintiff argues that it was incorrect for this Court to conclude that he failed to plead that he was treated differently than others similarly situated as a result of intentional or purposeful discrimination. (Recon. Br., Dkt. 33, at 5 (citing *Tang*, 2021 WL 1091908, at *7).) Plaintiff asserts that "the alleged fact that the defendants evicted [P]laintiff from his home without the adequate additional notice which was afforded to others who were evicted, *ipso facto*, is just the assertion that the plaintiff was treated differently from similarly situated individuals." (*Id.* (citing *Zahra v. Town of Southold*, 48 F.3d 674, 683 (2d Cir. 1995).) Plaintiff is flatly wrong. Ironically, the very case cited by Plaintiff rejects his argument.

In *Zahra*, the Second Circuit stated that a plaintiff must show two things to prove his equal protection claim: (1) that the plaintiff, "compared with others similarly situated, was selectively treated," and (2) that "the selective treatment was motivated by an intention to discriminate on the basis of impermissible considerations." *Zahra*, 48 F.3d at 683. As with Plaintiff's equal protection claim, "[t]he flaw in Zahra's equal protection claim [was] that Zahra assume[d] that to prevail he need only prove that he was treated differently from others." *Id.* at 684. However, as the Circuit explained, "[e]ven were we to assume, *arguendo*, that Zahra established . . . the 'selective treatment' prong[,] . . . Zahra never alleged that he was issued the subject violations because of his

race, religion, . . . to prevent him from exercising a constitutional right, [or because] of a malicious or bad faith intent to injure." *Id.*

Here, too, even assuming *arguendo* the sufficiency of Plaintiff's vague, non-specific claim that "others" were provided second notices, he has utterly failed to allege any facts from which to plausibly infer that Plaintiff was not given a second notice "because of his race, religion, . . . to prevent him from exercising a constitutional right, [or because] of a malicious or bad faith intent to injure." *Id.* Plaintiff has also failed to identify any facts that he could, in good faith, add to his Complaint that would permit the Court to draw such an inference.

Accordingly, Plaintiff has failed to demonstrate that the Court overlooked any "controlling decisions or data," *Cho*, 991 F.3d at 170, or made any "legal error[]," *Brien*, 588 F.3d at 175, or "mistake of fact," *Niederland*, 425 F. App'x at 11, with respect to his equal protection claim, or that he should have been granted leave to amend based on this claim. Thus, reconsideration under either Rule 59(e) or 60(b) would be inappropriate, as would granting leave to amend at this juncture.

## IV.   *Monell* Claims

Since Plaintiff once again "fails to establish a constitutional violation by any state actor," his *Monell* claims remain insufficient. *Tang*, 2021 WL 1091908, at *8. Nevertheless, Plaintiff argues that the Civil Court Directive discussed above establishes municipal liability because it demonstrates "deliberate indifference." (Recon. Br., Dkt. 33, at 7–9.) As discussed above, however, the Directive demonstrates the opposite. It demonstrates that rather than being indifferent to the alleged conduct of some marshals failing to provide a second notice where required, the City took active measures to correct the problem.

Thus, with respect to Plaintiff's *Monell* claims, Plaintiff also fails to show that this Court overlooked controlling precedent or made an error of law or mistake of fact, or that Plaintiff can plead additional facts sufficient to establish municipal liability. Accordingly, granting either reconsideration or leave to amend on Plaintiff's *Monell* claims would be inappropriate. *See Cho*, 991 F.3d at 170; *Brien*, 588 F.3d at 175; *Niederland*, 425 F. App'x at 11; *Ruotolo*, 514 F.3d at 191.

## V.   Diversity Jurisdiction and Plaintiff's State Law Claims

In his opposition to Defendants' motions to dismiss, Plaintiff requested that—if the Court decided to dismiss his § 1983 claims—that it "convert" the basis for jurisdiction over Plaintiff's state law claims from pendant jurisdiction under 28 U.S.C. § 1367 to diversity jurisdiction under 28 U.S.C. § 1332. (MTD Opp., Dkt. 24, at 6.) The Court declined, noting that Plaintiff had "cit[ed] no authority suggesting the Court may entertain such requests to convert the basis for jurisdiction," and also noting that Plaintiff "allege[d] no facts in either his Complaint or opposition to Defendants' motions to dismiss demonstrating that complete diversity of citizenship exists between all parties to the action." *Tang*, 2021 WL 1091908, *7 n.8 (internal quotation marks omitted). Plaintiff now argues that, because this Court "limited [P]laintiff's brief to six pages," he "simply did not have enough space in his brief to address the issue of diversity jurisdiction in detail. Thus, the above-noted denial actually caused manifest injustice." (Recon. Br., Dkt. 33, at 6.) Plaintiff also argues that it was error not to allow Plaintiff leave to amend on this point. (*Id.* at 6–7.) However, despite now filing a full motion for leave to amend and *two* reply briefs, Plaintiff *still* cites no cases suggesting that the Court may "convert" the basis for jurisdiction, and also does not proffer any additional facts to demonstrate that this Court has diversity jurisdiction over this action. (*See id.*)

Here, however, the Court nonetheless admits its own error—there were facts in the Complaint sufficient for the Court to conclude that complete diversity existed. Although Plaintiff does not raise it, there is, in fact, precedent for converting the basis for subject-matter jurisdiction from federal question to diversity. *Wright v. Musanti*, 887 F.3d 577, 583–86 (2d Cir. 2018) (holding that district court correctly asserted diversity jurisdiction over state law claims after the only federal claim in the case was dismissed). Additionally, "failure to allege facts establishing jurisdiction need not prove fatal to a complaint . . . where the facts of citizenship were clear" from the record as a whole, and "[i]t would be a waste of resources to require [a plaintiff] to refile the same lawsuit, changing only the basis for jurisdiction, when the district court was perfectly capable of analyzing the basis for its own jurisdiction." *Id.* at 585–86.

Again, Plaintiff does not raise this fact, but the Court also notes that Plaintiff's Complaint—filed on a *pro se* complaint form despite Plaintiff being a lawyer (*see* Dkt. 18 at 1 n.1)—lists his address as one in California and Grossman's as one in Brooklyn, New York (Compl., Dkt. 1, at 2), and Plaintiff's opposition to Defendants' motion to dismiss alleged that he is a "foreign citizen (citizen of [a] foreign state)" (MTD Opp., Dkt. 24, at 6). The record as a whole thus suggests that complete diversity existed, and if the Court had any questions on the issue, it could have requested affidavits from the parties. *Wright*, 887 F.3d at 585.

Accordingly, the Court grants reconsideration on whether the Court had diversity jurisdiction over Plaintiff's state-law claims. Upon reconsideration, however, the Court finds that, even assuming complete diversity, Plaintiff did not—and cannot—plausibly allege that the amount-in-controversy requirement to establish diversity jurisdiction was met, and thus the Court adheres to its previous ruling that the Court did not have diversity jurisdiction over this action, and explicitly affirms its implicit denial of Plaintiff's request for leave to amend on this ground. *See*

*CEO Clubs Inc. v. Worthy*, No. 10-CV-6729 (VB), 2011 WL 4472279, at *1 (S.D.N.Y. Aug. 30, 2011) (granting motion for reconsideration but adhering to previous ruling closing case based on different grounds).

To establish that this Court had diversity jurisdiction over this action, Plaintiff was required to show that more than $75,000 was in controversy. 28 U.S.C. § 1332; *Lupo v. Hum. Affs. Int'l, Inc.*, 28 F.3d 269, 273 (2d Cir. 1994) ("The Supreme Court has held that the party asserting diversity jurisdiction in federal court has the burden of establishing the existence of the jurisdictional amount in controversy."). Courts "presume 'that the face of the complaint is a good faith representation of the actual amount in controversy,' [but] a defendant may rebut that presumption by demonstrating 'to a legal certainty that the plaintiff could not recover the amount alleged or that the damages alleged were feigned to satisfy jurisdictional minimums.'" *Suarez v. Mosaic Sales Sols. US Operating Co., LLC*, 720 F. App'x 52, 53 (2d Cir. 2018) (summary order) (quoting *Colavito v. N.Y. Organ Donor Network, Inc.*, 438 F.3d 214, 221 (2d Cir. 2006)). Furthermore, this Court has "an independent obligation to determine whether subject-matter jurisdiction exists." *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006).

Here, Plaintiff's Complaint asserts that he is entitled to "compensatory and punitive damages in the amount of $504,000 (equal to approximately four times the additional costs of living as of the commencement of this action) plus prejudgment interests." (Compl., Dkt. 1, at 7.) Grossman, however, demonstrates "to a legal certainty," confirmed by this Court, "that the plaintiff could not recover the amount alleged." *Colavito*, 438 F.3d at 221; (*see* Grossman Opp., Dkt. 36, at 9–11.) In determining whether damages would be recoverable, this Court must "look to state law to determine the nature and extent of the right to be enforced." *Bloch v. Bluestone*, No. 10-

CV-6216 (NRB), 2011 WL 2693518, at *2 (S.D.N.Y. June 29, 2011) (quoting *Horton v. Liberty Mut. Ins. Co.*, 367 U.S. 348, 352 (1961)).

Under New York law, "[t]he measure of compensatory damages for wrongful eviction is the value of the unexpired term of the lease over and above the rent the lessee must pay under its terms, together with any actual damages flowing directly from the wrongful eviction." *In re Chavez*, 381 B.R. 582, 591 (Bankr. E.D.N.Y. 2008) (quoting *Long Isl. Airports Limousine Serv. Corp. v. Northwest Airlines*, 508 N.Y.S.2d 223, 225 (App. Div. 1986)). Also under New York law, "the issuance of a warrant of eviction cancels the lease between the parties and annuls the relationship of landlord and tenant," even where the actual execution of the warrant is stayed. *In re Eclair Bakery Ltd.*, 255 B.R. 121, 133 (Bankr. S.D.N.Y. 2000). Plaintiff thus suffered no damages based on an "unexpired term of the lease." As to actual damages, the stay of eviction had been lifted in this case, so while Plaintiff may have been entitled to an additional notice before being evicted, he had no right to remain in the dwelling, let alone for any length of time. *See In re Chavez*, 381 B.R. at 591. He therefore cannot plausibly allege *any* damages due to increased cost of living based on his eviction, let alone $504,000 worth. Plaintiff is thus unable to demonstrate that substantial compensatory damages are in controversy in this action.

Similarly, Plaintiff has not demonstrated that any punitive damages would be warranted. Under New York law, "punitive damages are permitted when the defendant's wrongdoing is not simply intentional but evinces a high degree of moral turpitude and demonstrates such wanton dishonesty as to imply a criminal indifference to civil obligations." *Shipman v. Charles Schwab & Co.*, No. 14-CV-4568 (ENV) (LB), 2016 WL 11472831, at *7 (E.D.N.Y. Aug. 11, 2016) (internal quotation marks and brackets omitted) (quoting *Ross v. Louise Wise Servs., Inc.*, 868 N.E.2d 189, 196 (N.Y. 2007)). Furthermore, "in computing [the] jurisdictional amount, a claim

for punitive damages is to be given closer scrutiny . . . than a claim for actual damages." *Nwanza v. Time, Inc.*, 125 F. App'x 346, 349 (2d Cir. 2005) (summary order) (brackets omitted) (quoting *Zahn v. Int'l Paper Co.*, 469 F.2d 1033, 1034 n.1 (2d Cir. 1972)). Here, Plaintiff's allegations come nowhere near demonstrating "a high degree of moral turpitude and . . . such wanton dishonesty as to imply a criminal indifference to civil obligations." *Shipman*, 2016 WL 11472831, at *7. Plaintiff emphasizes that he requested leave to amend on the issue of diversity jurisdiction, yet even on his present motion for leave to file an amended complaint, he has failed to proffer any additional facts that he might add to his Complaint that would support concluding that over $75,000 is in controversy. It is therefore clear, "to a legal certainty," that Plaintiff could not recover more than $75,000 in compensatory and punitive damages, let alone the $504,000 alleged, and thus this Court could not previously, and cannot now, exercise diversity jurisdiction over his state law claims. *See Colavito*, 438 F.3d at 221; 28 U.S.C. § 1332.

Furthermore, even if the Court were to determine that it had diversity jurisdiction, all of Plaintiff's state law claims would be time-barred.[6] To reiterate, Plaintiff's state-law claims are (i) unlawful eviction under Real Property Actions & Proceedings Law § 853, (ii) negligence, (iii) intentional infliction of emotional distress, (iv) negligent infliction of emotional distress,

---

[6] Grossman raised this issue in his opposition to the present motions. (Grossman Opp., Dkt. 36, at 7–8.) Plaintiff had a fair opportunity to respond in his replies. However, despite granting himself leave to file two replies, he does not substantively address the issue in either. Instead, he argues that this Court lacks subject-matter jurisdiction to resolve any issues related to his state law claims—a quixotic argument given that he asks this Court to find that it has diversity jurisdiction. (*See* Reply Mem. I, Dkt. 37, at 3–4.) He also, however, asserts that "it should . . . be noted that [P]laintiff actually explained his state-law claims in detail[] in his opposition to [D]efendants' motion to dismiss." (*Id.* at 4.) In that opposition, Plaintiff asserted that the N.Y. C.P.L.R. § 215(1)'s one-year statute of limitations should not apply to Plaintiff's state-law claims because he also asserted constitutional claims—a completely meritless argument—and also that his negligent infliction of emotional distress claim is subject to a three-year statute of limitations—an argument that the Court rejects below. (*See* MTD Opp., Dkt. 24, at 5.)

(v) conversion, and (vi) trespass to chattels.  N.Y. C.P.L.R. § 215(1) creates a one-year statute of limitations for all claims against marshals based on alleged liability incurred during evictions. *Vargas v. Wughalter*, No. 08-CV-11378 (DC), 2009 WL 2356832, at *5 (S.D.N.Y. July 30, 2009) (citing N.Y. C.P.L.R. § 215(1)), *aff'd*, 380 F. App'x 110 (2d Cir. 2010); *Jemison v. Crichlow*, 531 N.Y.S.2d 919, 922 (App. Div. 1988), *aff'd*, 543 N.E.2d 78 (N.Y. 1989).  That applies to claims brought under Real Property Actions & Proceedings Law § 853, *Gold v. Schuster*, 694 N.Y.S.2d 646, 648 (App. Div. 1999), as well as to the types of torts arising from evictions that Plaintiff alleges here, *Jemison*, 531 N.Y.S.2d at 921.

The statute of limitations begins to run from the time that a tenant "has been unequivocally removed with at least the implicit denial of any right to return."  *Gold*, 694 N.Y.S.2d at 648.  Here, Plaintiff was evicted on November 3, 2016, and did not file this action until October 28, 2019— almost three years later.  (Compl., Dkt. 1, at 6, 8.)  Accordingly, all of Plaintiff's state law claims were clearly time-barred and any leave to refine his state law claims would be futile.[7]

---

[7] The Court notes that *Jemison* involved four of Plaintiff's five common law tort claims— negligence, intentional infliction of emotional distress, conversion, and trespass to chattels—but not negligent infliction of emotional distress, for which the statute of limitations ordinarily is three years.  *See Yong Wen Mo v. Gee Ming Chan*, 792 N.Y.S.2d 589, 591 (App. Div. 2005).  The Court also has not identified any case applying N.Y. C.P.L.R. § 215(1)'s one-year statute of limitations to claims of negligent infliction of emotional distress.  However, the plain language of N.Y. C.P.L.R. § 215(1) and the logic of *Gold* and *Jemison* make it clear that N.Y. C.P.L.R. § 215(1)'s one-year statute of limitations should apply to all claims against marshals based on alleged liability incurred during evictions, and there would be no principled reason to distinguish negligent infliction of emotional distress from the other torts discussed in *Jemison*.  *See* N.Y. C.P.L.R. § 215(1); *Jemison*, 531 N.Y.S.2d at 923; *Gold*, 694 N.Y.S.2d at 648.

Furthermore, even if N.Y. C.P.L.R. § 215(1) did not apply to Plaintiff's claim for negligent infliction of emotional distress, and the general three-year statute of limitations for such claims applied, Plaintiff's claim would still fail as a matter of law.  To state a claim for negligent infliction of emotional distress under New York law, a plaintiff must show "a breach of a duty owed directly to the plaintiff which either unreasonably endangers a plaintiff's physical safety or causes the plaintiff to fear for his or her own safety."  *E.B. v. Liberation Publications, Inc.*, 777 N.Y.S.2d 133, 135 (App. Div. 2004); *see also Sacino v. Warwick Valley Cent. Sch. Dist.*, 29 N.Y.S.3d 57, 60 (App. Div. 2016).  Aside from a conclusory statement in his opposition to his motions to

For the reasons explained above, the Court grants the motion to reconsider with respect to the reasoning behind its previous ruling that the Court lacked diversity jurisdiction over this matter. However, upon reconsideration, the Court still concludes that it lacks diversity jurisdiction, and that any amendments, either with respect to subject-matter jurisdiction or Plaintiff's state-law claims, would be futile.

## CONCLUSION

For the reasons explained in this Memorandum & Order, the motions for reconsideration and for leave to file an amended complaint are denied, except with respect to reconsideration of this Court's reasoning with respect to the lack of diversity jurisdiction.    However, on reconsideration of that issue, the Court still concludes that it lacks diversity jurisdiction over this matter.   Accordingly, the Court adheres to its prior dismissal and closure of this case.

SO ORDERED.

*/s/ Pamela K. Chen*
Pamela K. Chen
United States District Judge

Dated: February 2, 2022
Brooklyn, New York

---

dismiss, Plaintiff has not alleged any facts supporting an inference that Grossman's actions unreasonably endangered Plaintiff's physical safety or caused Plaintiff to fear for his own safety, and despite a full motion to amend and two replies, Plaintiff has failed to proffer any such facts.